Good morning, ladies and gentlemen. Welcome to the Fifth Circuit Court of Appeals. We have four cases to be submitted today on oral argument. We're planning to hear the first two and then take a brief recess and then finish the docket for the day. And we begin with Cortez v. Rubio. Mr. Hinojosa. Good morning, Your Honor. Today I'm going to be talking about a case that deals with requesting a passport by a U.S. citizen. The facts of the case are very similar to many other cases. And in the past, it had been determined that under 8 U.S.C. Section 1503A, the five-year statutory period of limitations was a jurisdictional rule. This court determined recently in Saragavino that it was not jurisdictional. And my understanding is that that means, then, that we are subject to equitable toll. At the time that the district court made that ruling, that decision, in this case, that it was jurisdictional, it did not have the benefit of this court's ruling in Saragavino. Now, we did have the benefit of Riley v. Bondi and Santos-Zacarias, which were some of the cases that this court used to decide that that five-year statutory period of limitations was not jurisdictional. The court was made aware of this, and I guess, in my mind, it had an opportunity to have reviewed that, but they followed the guidance of this court. Now, that means that we never got to actually hear or consider the reasons for equitable tolling in the district court. And to me, this makes it a good candidate for this case to be remanded so that we can have an opportunity to show or present to the district court the reasons why equitable tolling should apply. Well, just in case we were to decide not to remand it, but to decide that ourselves, why don't you tell us what you think are the reasons for equitable tolling? Because we could decide that ourselves. Yes, Your Honor, I will certainly do that. So, the first time my client got a passport was in 2003. He had his passport for somewhere around 10 years, and then he lost it in 2013. He lost it, and he went, he was in Mexico, in Monterrey, and he lost it, and he went to the U.S. Embassy in Monterrey and reported his passport stolen. And it's not 100% clear to me, but I believe that an application was submitted for a new passport. But during the interim, he finds his lost passport. So, he decides to come back to the United States. He comes in through Houston and the international, Bush International Airport. There, he stopped, they take away his passport. And they actually denied that application at the end of the day. So, my client immediately files for another passport application. Why did they take his passport away? Because he had reported it lost. And so, they said, well, the passport had been reported lost, so then we're going to take it away. Now, after that, in 2015, they denied his passport. And they denied his passport on what I would argue, a separate grounds required. But it seems to be, by some precedent of this court and other courts back in the 1950s, that a denial for any reason is a denial under the statutory grounds. Now, I disagree with that. Fundamentally, this is not the structure of the statute. But that's the, I guess, the second denial. And... Well, counsel, perhaps I'm kind of narrow, but I thought that when he tried to renew it, the State Department discovered his Mexican birth certificate, and that caused him to question the U.S. citizenship. That happened in the 2015 decision that was denied. And so, that was the, I guess, in my understanding, that was the first time that that happened or that actually happened, that denied that. Now, after they denied that, arguably because there was a Mexican birth certificate, and there was a Mexican birth certificate. But they denied it. The court has a new passport until he gave more evidence that he was born in the United States. Although, then he had to understand that he had several chances to cause numerous passport applications, but he never did so. So, is that accurate or not? No. In the 2015 denial, he did give several different reasons. He sent more information. They even had an oral, according to the record, they had an oral interview with him. And then they denied it in 2015. And so, but they didn't deny it on the basis that he was not a national of the United States. They said, look, you haven't proven to us that you are. Now, after that, he filed another application for a passport. That application was filed in 2019. Now, in 2020, that application is denied on the basis that he did not have, he was not current in his child support. And then, sometime in 2014, after he sends a whole bunch more evidence, they decide to deny his application on the grounds that he had not shown by the preponderance of the evidence that he was, that he had been born in the United States, I suppose. And he has never shown any evidence of that, of his mother's presence in the United States when he was born. Any kind of a church or government document or any other kind of documentation. Is that right? He did show, we sent some evidence relating to those issues. And one of them was an affidavit from his mother. We also were not able to get, even though the mom said that she was able to travel to the United States back in those days with a border crossing card, we have not been able to get those records. So those records were not available to us. Now, in that sense, the issue becomes, or the secondary issue becomes, or maybe even the most important issue becomes, you know, what does the statute require? Because the statute clearly says that the determination needs to be based on the basis that he is not a national of the United States. Now, when I read that statute, to me, that means that the burden is not on the applicant for a passport application. However, that is not an argument to be made here at this point. I'm just stating it for the purposes of equitable tolling and why we need to have this case remanded or reconsidered. Because the question is, should my, should Mr. Cortez be allowed to show what should be the correct interpretation of the law? So what do you do with the evidence? As I understand it in the record, that there was a conflicting birth certificate from Nuevo Leon, April 21st, 1977, a Mexican birth certificate. So there was this Mexican birth certificate. Now, the Texas birth certificate was first in time. The Texas birth certificate was a contemporaneous document. The argument is that the Mexican birth certificate was not a contemporaneous document. That was created after. And in the affidavit the mom gave us, she explains why this was done. As a matter of fact, my client went and studied in Mexico for a long, long, long time. So what's the innocent explanation for being born twice? Well, he wasn't born twice. The mom goes over there and creates a Mexican birth record for him. Why? Because she wanted him to go to school. So the idea is that it was immigration fraud in Mexico, but not in the United States? Well, yes, it could be the case. It could be the case. I don't know if it was or not, but yes. Now, the question is, the other question is, in my mind, you know, what constitutes, well, to follow up on the Ecuadorian argument. So then my client was actively pursuing his rights. Those decisions, in my mind, when I read them, when I looked over them, were not actually clear that they were fine. It gave the impression that all my client had to do was give more information or a little more information. And that's what he tried to do. Counsel, what do you do with the claim processing rule? 1503A, yes, gee, I can't remember, five years lapsed. And on his face, it appears that that claim processing bar, which is there as a practical to resolve these, to avoid taking on cases where the evidence is not fresh, et cetera. But that is a firm claims processing rule. What do you do with that, say to that? Well, what I say to that is that he had five years, the question is five years from what period first. That's one of the questions that I have, and I'm going to attempt to answer that. And the other issue is that there was an intermediate decision in 2019 that said, because you have not paid child support, we're going to deny you. And that did not mention, it mentioned the regulatory grounds for denying it on the basis of no payment of child support, which is correct, the department can do that. But it did not mention at that point the non-nationality grounds. And then my client went back and tried to fix his child support issue, filed another application, and that other application, somewhere in 2020, 2021, that other application was never acted upon until 2024. And as a matter of fact, the government says, or the letter says that they decided the case, denied the case in April of 2024. But we had to ask for proof of that, and they sent us a letter in August of 2024 saying, yes, we denied it in April 2024. But my client never got actual notice of that. So we believe that that intervening decision regarding the child support created grounds to believe that it was a qualitatively different decision. And then the final decision that happened, if there was a final decision, could have been the it wasn't. Which brings me to the other issue, what do you do with the fact that under 8 U.S.C. Section 1503, in order to bring a claim, you need to have a denial that is based on non-nationality. But if you don't have that denial, then you can't bring a claim under 8 U.S.C. Section 1503A. And that kind of explains, in my mind, how it is that the 1950 decisions got this whole thing confused. Because back in the 1950s, several courts decided the issue that any denial was good enough for statutory purposes, but that was because the government was taking too long in making those decisions. And some of these folks back then needed to get into the country. They were actually outside the country they were trying to get in, most of them. And then this ruling all of a sudden becomes applicable to all future passport applications. And I just think that was a misunderstanding of two things. First, a misunderstanding of what the statutory ground was. They were trying to create an equitable remedy, but that's not necessarily the court's position. And second, a misunderstanding as well of what the cases themselves hold. I believe that in 2024, if we are to use those cases, which I am not sure that they would be applicable, it would only make that decision the final decision for purposes of the five-year period, because the government took so long. Thank you. You've saved time for a vote. Thank you. Yes. Yes, go on. May it please the court, Jennifer Bowen, on behalf of the defendant, Pali, the Secretary of State. For the reasons stated in the responsive brief, this court should dismiss this appeal. While this court did issue a decision, the district court in this case held it lacked jurisdiction. It cannot be disputed that following that decision, this court issued a precedential decision in Villegas, Arabia, holding- Keep your voice up so the younger followers can hear. I apologize, Your Honor. In Villegas, Arabia, which was issued after the district court's decision in this case, holding it lacked jurisdiction, this court held that the time bar in Section 1503 is a non-jurisdictional claims processing rule. That cannot be disputed. Yes, and Mr. Hinojosa has- Right. Nonetheless, remand in this case would be futile because the claim is time barred. Well, now, I don't mean to be nitpicky about words, but at the beginning you told us we should dismiss this appeal. Yes, Your Honor. I thought what you would be telling us is that we should affirm the district court's dismissal. I apologize, Your Honor, if I misspoke, but I understand that this court cannot affirm the district court's denial as a matter of lack of jurisdiction. Nonetheless, this court should affirm the dismissal of the claims, but it will not be under- You're going to have to explain that because we very commonly either affirm or reverse where a district court has dismissed for non-jurisdiction. But Your Honor, this court has held that this court, that the claims bar in Section 1503 is a non-jurisdictional claims processing rule. That decision was issued after the court held that it lacked jurisdiction where this claim was filed more than five years after either the 2013 denial or the 2015 denial. The 2013 denial was an application for a renewal passport, whereas the 2015 denial was an application for a new passport. Whichever one, it's still more than five years later. This claim is still time barred under Section 1503, but the law in this circuit has changed such that it's no longer a jurisdictional issue. That is respondent's position based on this court's law. So, why would we dismiss? I mean, sometimes we dismiss because we lack jurisdiction. Sometimes we dismiss, I guess, because an appeal is frivolous. But what would be the reason that we would be dismissing here instead of affirming? I know that I've asked that question before and maybe you're giving a perfectly good answer, but I don't understand. Your Honor, respondent's position is that this court should affirm the dismissal of the claims, but it would not be affirming the basis. It would not be affirming under this court's law. All right. So, you've changed what you told us in the beginning. Oh, I didn't. I apologize, Your Honor. I didn't mean to... You started out by saying we should dismiss this appeal. Right. Deny the appeal. Yes, Your Honor. I apologize if I'm misspeaking. At the end of the day, these claims are time barred under Section 1503. It is no longer a question of jurisdiction. Nonetheless, it is still a claims processing rule that applies here, and such that remand to the district court would be futile, even though this court's precedent changed following the district court's decision. And if we were to remand, would the district court be empowered to exercise equitable tolling? Your Honor, respondent does not concede that this court has never held that Section 1503, the time bar in Section 1503, is subject to equitable tolling. Respondent does not concede that equitable tolling would apply. Rather, respondent's position is that this court does not need to decide that issue. In this case where the court has... In his opening brief, the only basis for equitable tolling that he asserts is that he's continued to apply for a passport. This court has held that the time bar in Section 1503 is clearly intended to prevent duplicative applications for the same relief from reopening the courthouse doors upon denial. So it cannot be, as a matter of law, whether or not equitable tolling were to apply, that repeatedly applying for a passport would allow for equitable tolling of Section 1503. So the Secretary's position is that this court need not decide the issue of equitable tolling here, whether it applies to 1503, because whether it applies or not, it would not apply here. As for the issue of the decision, Cortez has taken the position that a decision that finds that he failed to sufficiently show his nationality is not sufficient to start the time bar under Section 1503. Here, it's clear that the statutory scheme places the burden on an applicant to show that he is a national of the United States entitled to a passport. Under that statutory scheme, it must necessarily mean that any finding that he has failed to meet that burden would be sufficient to start the time bar, the clock, the five-year clock under Section 1503. Such that the first denial in 2013 or even the second denial in 2015 would have started that time clock, and this case filed would be subject, would be time barred under Section 1503. Which do you say it is, 2013 or 2015 or some other? No, Your Honor. It's, Your Honor, we would take the position that it's 2013, but even if you were to find that where that was an application for a replacement passport, and that's somehow different than an application for a new passport, it's time barred under either 2013 or 2015. So, in summary, where remand to the district court would be futile because these claims are time barred, even though the district court may have had jurisdiction, they were nonetheless subject to a time bar and therefore subject to dismissal as a claim upon which relief could not be granted. The claims were subject to dismissal. So, this court should affirm the dismissal of the claims, even recognizing that there was jurisdiction. All right. Thank you, Ms. Bowman. Mr. Hinojosa, you've saved some time for rebuttal. First, I want to address, of course, from our perspective, equitable tolling does apply, and there's enough in the record to show why equitable tolling applies. There was a qualitative different decision made in the interim. The first decision was not under the statutory grounds, and it is our position that none of them work because the statute requires the decision be made and the way the statute is structured is an affirmative decision saying he's not a national of the United States. That statutory scheme places the burden not on the applicant, but on the government, and this will make sense because we're dealing with a situation of a United States citizen, arguably under the 14th Amendment, because we're not saying that he we're saying that this is a birth-based citizenship, not one that was acquired through parents by birth. And so, that's why I think Congress chose the words they chose. The Supreme Court decided a called Ms. Chavez in which it dealt with the word A, an article, one little word A, where the lower courts have taken the position that you can send several documents to make one notice to appear, and the court said no, this little article A means something, and so that means that there's one notice only, so we're not going to take two notices and make them one. So, if it stands to reason that if one word like the article A means something, a whole set of words on the grounds that the person is not a national of the United States means something as well, and to say that it means nothing or to decide that we're just going to place or erase that limitation means that we're changing the statute. Neither this court, nor the district court, nor any other court is authorized to change statutes, and that is our position on a more maybe philosophical level, but that's the structure of the Constitution. We have separation of powers for a reason. I did not write the statute. My client certainly did not write the statute. The statute was written by Congress. Now, we have a statute that we need to deal with. The courts back in the 1950s decided we're going to apply equity because it's unfair that these individuals can't come in, so we're going to ignore the way the statute is required, because the government is taking too long, and if we allow them to continue to say you don't have an 8 U.S.C. Section 1503 claim because you're taking too long, that would be unfair to the applicants, because in that scenario, they were outside of the country, and if they continued, they would lose their rights. So, they decided to create an equitable remedy. Now, all of a sudden, this equitable remedy becomes a statute. That is not appropriate. Now, that's besides the fact that the reason why something is either jurisdictional or it's not is because we want to question, does equitable tolling apply or doesn't it, and if equitable tolling applies because the statute is non-jurisdictional, that's it. Now, you have a record. That record is a cold record. We could have had that opportunity in the district court and even developed it a little more. I do not know, for example, what evidence my client presented originally got his 2003 passport, but I already know that there was a decision that said, yes, you are a citizen of the United States, and then they changed their minds. Well, your client had a full opportunity to present any sort of evidence that he wished to present, but the Department of State concluded that all of the evidence supported birth in Mexico and not the U.S. In what way was your client barred from or frustrated from presenting as much evidence as he wanted to? He did that. He tried to do that, but they never agreed with him. They never thought it was enough. That's why they took from somewhere around 2020 or so, almost four years to make a decision back in 2024 that they were going to deny his claim, and then they don't even deny it on the right statutory reason. So, for all those reasons, I think that the district court's decision was wrong and it should be denied and sent back. Thank you, Mr. Hinojosa. Your case is under submission.